IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY CALLAHAN,                              Case No. 3:15-cv-00754-AA
                                             OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Defendant.
_____

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
        Attorney for plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Lisa Goldoftas
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, Washington 98104
        Attorneys for defendant
1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff brings this action pursuant to the Social Security Act (the Act) to obtain judicial review of a final decision of the Commissioner denying plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## BACKGROUND

On March 8, 2012, plaintiff protectively filed applications for DIB and SSI, alleging disability since April 30, 2009. Tr. 263-75. The applications were denied initially and upon reconsideration. On November 6, 2013, plaintiff, her mother, and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). Tr. 43-97. November 22, 2013, the ALJ issued a decision finding plaintiff not disabled. Tr. 24-42. On February 27, 2015, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review.

Born in 1986, plaintiff was twenty-six years old when the ALJ issued the decision denying benefits. Tr. 55. Plaintiff completed high school and two years of college and has past relevant work as a security guard. Tr. 42, 55-56. Plaintiff alleges disability since April 2009 primarily due to limitations arising from mental health impairments, including anxiety and depression. Tr. 288.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It

2 - OPINION AND ORDER

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## COMMISSIONER'S DECISION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset of her disability. Tr. 29; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At steps two and three, the ALJ found that plaintiff had a "medically severe impairment or combination of impairments" including affective disorder, anxiety disorder, personality disorder, and substance abuse disorder; but that these impairments did not meet or equal a listed impairment. Tr. 29-32; 20 C.F.R. §§ 404.1520(c),(d), 416.920(c),(d).

The ALJ then assessed plaintiff's residual functional capacity (RFC) and found that she had the cognitive ability to perform semi-skilled work similar to her past relevant work, as well as unskilled, routine, repetitive work requiring no more than occasional contact with supervisors

and with regular two-hour breaks. Tr. 32. The ALJ also found that plaintiff can work in proximity to coworkers, though not in a team or cooperative effort, and she can have contact with the general public so long as direct service is not required. *Id.* At step four, the ALJ found that plaintiff's RFC allowed her to perform her past relevant work as a patrolling security guard. Tr. 42; 20 C.F.R. §§ 404.1520(e),(f), 416.920(e),(f).

Given the step four finding, the ALJ did not proceed to step five, where the burden shifts to the Commissioner to show that a claimant is capable of performing other work existing in significant numbers in the national economy.[1] *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Accordingly, the ALJ found plaintiff not disabled under the Act.

## DISCUSSION

Plaintiff argues that the ALJ erred by: 1) failing to include impairments at Step Two; 2) discrediting her subjective testimony; 3) rejecting the statements of lay witnesses; 4) rejecting the opinion of treating and examining medical providers; and 5) providing an inaccurate hypothetical to the vocational expert.

A.    Step Two Findings

Plaintiff argues that the ALJ also should have found severe impairments of posttraumatic stress disorder (PTSD), dissociative identity disorder, head trauma, pulmonary embolism, and febrile seizures. However, any error in omitting a severe impairment at step two is harmless if the ALJ considers limitations resulting from the impairments in the subsequent RFC determination. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Here, the ALJ noted plaintiff's various diagnoses and expressly stated: "Despite the disagreements among the professionals as to the correct diagnostic label, this decision addresses all the limitations that the

---

[1] Although the ALJ did not proceed to step five, the vocational expert identified other work that a claimant with plaintiff's RFC could perform. Tr. 93.

claimant has alleged or has been opined, no matter the diagnostic label." Tr. 30. Plaintiff identifies no limitation resulting from PTSD or dissociative disorder that is established by the record but nevertheless omitted from the RFC analysis. Thus, any error at step two was harmless.

B.    Credibility Findings

Plaintiff argues that the ALJ did not provide clear and convincing reasons to discount her subjective complaints.

If a plaintiff produces objective medical evidence of an impairment which reasonably could be expected to produce some degree of the alleged symptoms, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (unless evidence of malingering is present in the record, the ALJ must base adverse credibility finding on clear and convincing reasons). "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ provided several reasons for discrediting plaintiff's testimony and allegations. First, the ALJ found that plaintiff's increased symptoms were motivated by the desire to obtain benefits rather than to obtain mental health treatment. Tr. 33-34. The ALJ considered that for the nine-month period prior to her disability application in March 2012, plaintiff did not report experiencing significant mental health problems, even though she had other medical appointments during that period. Tr. 33-34. The ALJ noted that in June 2011, plaintiff reported

improvement to Dr. Strickland, her treating physician, indicating that she was doing well with Prozac, coping well, and that things with her live-in partner were going well. Tr. 33, 473.

I am not persuaded that the record supports the finding that plaintiff's depressive symptoms appeared or worsened in order to obtain disability benefits. Plaintiff had sought out Dr. Strickland in March and April 2011 – one year prior to applying for disability – and complained of depression. Tr. 497, 507-510. Plaintiff was hospitalized in April 2012 for suicidal ideation and referred to an outpatient treatment program due to "worsening depression, anxiety, and suicidality." Tr. 437. In August 2012, she again sought help at the emergency room, was diagnosed with suicidal ideation and entered an outpatient treatment program. Tr. 848, 851, 854, 894-901. Aside from applying for benefits in March 2012, the ALJ cites no evidence showing that plaintiff feigned or exaggerated her symptoms in order to obtain benefits.

However, the record nonetheless supports the ALJ's finding that plaintiff was focused on obtaining disability benefits. The record reflects that plaintiff expressed the desire to "get on SSI" and that she was "focused on her inability to work" and on obtaining documentation to support disability benefits. Tr. 34, 435-36, 851, 1014. In April 2012, she left the outpatient treatment program early, stating that group sessions did not "fit her needs," she was "actually stable right now," and she needed someone to assess why she "was not able to work" Tr. 34, 435.

Second, the ALJ found that plaintiff failed to follow recommendations to obtain psychological treatment or counseling. Tr. 34-36. The ALJ noted that plaintiff testified to difficulties finding a counselor, even though Dr. Strickland provided an extensive list of resources for psychiatric help. Tr. 35-36, 59-64, 469-70. The record supports the ALJ's finding that plaintiff has not followed the repeated recommendation to seek psychological treatment. Plaintiff maintains that her difficulty is due to a lack of resources in addition to her

communication and stress issues, while the ALJ found that plaintiff had not followed the repeated advice to obtain counseling. Although treatment providers have noted that she attempts to participate in treatment when referred to a program, the record reflects little attempt on plaintiff's part to obtain continuing psychological treatment, as recommend by treating and examining physicians. Tr. 435, 441, 447, 450, 508. The medical evidence does not include counseling records or show that she followed through with recommendations to obtain psychological services. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (failure to follow recommended treatment plan is relevant to credibility).

The ALJ also noted that plaintiff continued to use marijuana against the advice of medical providers. Tr. 38. The ALJ highlighted plaintiff's inconsistent claims to treatment providers about alcohol and marijuana use, and noted that plaintiff was discouraged from using marijuana. Tr. 38, 439, 440-41, 520, 939-41, 1030; *see also Tommasetti*, 533 F.3d at 1039 (the ALJ may rely on inconsistent statement in assessing credibility).

Finally, the ALJ noted that plaintiff's reported daily activities of household chores, doing laundry, cultivating plants, grocery shopping, using public transportation, and doing beadwork were inconsistent with her allegations. Tr. 37. The ALJ further found that plaintiff's allegations of social isolation were contradicted by her ability to engage in group discussions, drink alcohol two or three times weekly "on a social basis," and engage in role-playing games several times a week with a group or on a computer. Tr. 37, 297-99, 435, 520, 1016. While these activities may not define plaintiff's ability to work, they are arguably inconsistent with her allegations of complete disability. *Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Though I have misgivings about some of the ALJ's credibility findings, several reasons cited by the ALJ are supported by evidence in the record and are legally sufficient to discount the severity of plaintiff's subjective complaints.

C.    Lay Witness Testimony

Plaintiff also argues that the ALJ erred in discrediting lay witness statements provided by Cory McAllister, a vocational rehabilitation services representative, her parents, and a friend, Christopher Wadkins.

An ALJ may reject the statements or testimony of lay witness by making findings germane to such statements or testimony. *Molina*, 674 F.3d at 1114; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, I find that the ALJ provided germane reasons to discount the testimony and statements of the lay witnesses.

In August 2012, Mr. McAllister listed a number of plaintiff's impairments and rated her as "Most Significantly Disabled." Tr. 41, 656, 681. The ALJ gave no weight to McAllister's disability "rating" because, a vocational counselor is not an acceptable medical source. Tr. 41. Only "acceptable medical sources," such as licensed physicians and licensed or certified psychologists, may provide evidence to establish a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Further, as noted by the ALJ, no explanation was given for the "Most Significantly Disabled" rating, and no description was given regarding the extent of plaintiff's limitations. I find these reasons supported by the record and germane to Cory McAllister. *Molina*, 674 F.3d at 1111.

The ALJ accepted part of plaintiff's father's statement as consistent with the record, including the statement that plaintiff had improved with mental health treatment and could work in the low-stress environment of her first security guard position. Tr. 39, 342. The ALJ also

found part of Mr. Wadkins' statement persuasive, noting it indicated plaintiff engaged in activities such as video and role-playing games, sculpting, drawing, household chores, and grocery and art-supply shopping. Tr. 39, 297-99.

However, the ALJ rejected Mr. Callahan's statement and Ms. Callahan's testimony regarding the severity of plaintiff's limitations, finding such statements inconsistent with plaintiff's daily activities and her minimal treatment. Tr. 39-40, 80-84, 297-99, 342. Further, the ALJ observed that they did not know of or consider plaintiff's substance abuse, which plaintiff admitted had affected her cognitive abilities. Tr. 29, 39-40, 81, 939-41 (plaintiff "recognizes that smoking marijuana has had an impact on her cognition"). With respect to Mr. Wadkins, the ALJ found that his statements regarding plaintiff's alleged panic attacks, vertigo, low energy, and memory problems were inconsistent with plaintiff's treatment records. Tr. 39, 295. As with Mr. McAllister, these reasons are germane to each witness and entitled to deference.

C.    Evaluation of Medical Evidence

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to reject the opinion and conclusions asserted by a treating physician and an examining psychologist.

Generally, three types of medical providers render opinions in social security cases: treating, examining, and non-examining medical providers. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

Plaintiff argues that the ALJ erred by rejecting the impairments diagnosed by Dr. Reuther, which included depression, post-traumatic stress disorder, dissociative identity disorder, and a personality disorder. Tr. 441. Notably, plaintiff identifies no specific limitations found by Dr. Reuther and rejected by the ALJ in the RFC assessment. Rather, plaintiff simply argues that the ALJ rejected impairments found by Dr. Reuther. Regardless of the diagnosed impairments, plaintiff must identify limitations found by Dr. Reuther that affects her ability to work. While Dr. Reuther opined that plaintiff experienced "worsening" depression and anxiety symptoms, and an "accompanying impairment in functioning," Dr. Reuther did not explain how those symptoms translated to limitations or the inability to work. Tr. 440. Plaintiff also takes issue with the fact that Dr. Reuther found plaintiff to have a Global Assessment of Functioning (GAF) of 35 to 40, and 40 at initial and follow-up evaluations. Tr. 441, 941. However, while a GAF score may help guide an ALJ's determination, an ALJ is not bound to consider or accept it. *Hughes v. Colvin*, 599 Fed. App'x 765, 766 (9th Cir. 2015) ("a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations").

As noted by the ALJ, Dr. Reuther indicated that plaintiff could adhere to a treatment plan and benefit from active treatment. Tr. 36, 37, 441, 941. In September 2012, Dr. Reuther indicated that plaintiff had fair judgment and insight, attention and concentration, intact memory, intact language and naming, and good fund of knowledge. Tr. 37, 939-41. The ALJ concluded that nothing in the evaluation suggested limitations beyond those included in the RFC. Tr. 37. Therefore, I find no reversible error arising from the ALJ's evaluation of Dr. Reuther's opinion.

In May 2012, consulting psychologist Dr. Goodale conducted a psychological evaluation. She stated:

10 - OPINION AND ORDER

Ms. Callahan's reflection of her past difficulties and symptoms reflect several characteristics of a borderline personality disorder....Rather than reported experiences of anxiety or panic attacks, Ms. Callahan describes becoming "emotionally overwhelmed" when under general stress and dealing with others. These characteristics again are often consistent with a borderline personality disorder.

Cognitively, Ms. Callahan does not exhibit any significant impairment. When motivated to do so, she is likely able to maintain attention and concentration and persist in completing most tasks. Her effort and motivation however, are likely variable as evidenced in her engagement in the psychological interview. When faced with more challenging or complex tasks, Ms. Callahan's tendencies may be to easily give up, likely as a way to avoid becoming overwhelmed.

Given Ms. Callahan's ongoing mood symptoms and characterological traits, she will likely continue to have difficulty maintaining steady and long-term employment. She may find it difficult to engage appropriately with others in the workplace including coworkers, supervisors and customers particularly when she is feeling emotionally overwhelmed. She would likely perform best in tasks that are simple in nature and do not change much from day-to-day as a way to eliminate work stress and amongst few others in the work environment.

Tr. 523-24.

The ALJ explained that Dr. Goodale noted inconsistencies by plaintiff and suggested she was not putting forth good effort. Tr. 30, 37-38, 523, 524. The ALJ accepted limitations assessed by Dr. Goodale with respect to plaintiff's motivation and persistence but gave little weight to Dr. Goodale's statement that plaintiff likely would have difficulty maintaining steady and long-term employment. Tr. 41, 524. The ALJ reasoned that this conclusion was inconsistent with the variable nature of plaintiff's complaints and her minimal treatment. Tr. 41. Further, the ALJ concluded that Dr. Goodale's suggestion was vague and "vocationally" irrelevant because it did not describe specific limitations on plaintiff's ability to work. Tr. 41, 524. I note that Dr. Goodale's opinion was based on plaintiff's "ongoing mood symptoms" and "characterological traits" personally observed and assessed by Dr. Goodale, an assessment that was accepted by the ALJ.

11 - OPINION AND ORDER

Regardless, the ALJ's ultimate findings do not contradict limitations found by Dr. Goodale. While she noted that plaintiff "likely" would have difficulty maintaining employment, Dr. Goodale also stated that plaintiff could perform simple and routine tasks with little contact with others. Tr. 524. Plaintiff's past work as a patrolling security officer, a job which the ALJ found that plaintiff could perform, fits this description. Therefore, I find no reversible error arising from the consideration of Dr. Goodale's opinion.

Finally, plaintiff argues that the March 2014 statement of a treating physician, Dr. Angela Marshall-Olson, establishes disability. Dr. Marshall-Olson saw plaintiff on eight occasions from January to March, 2014. Tr. 10. In her letter submitted to the Appeals Council, Dr. Marshall-Olson stated:

> Ms. Callahan has had episodes of severe mood dysregulation, and expressed significant depressive symptoms at her previous office visits with me. These are remarkably disabling to her, often contributing to her isolating from friends and family, and making it very difficult to interact with the general public. She has expressed that she finds it difficult to communicate with others, and I suspect that she may have a behavioral spectrum disorder. She has difficulty making eye contact; she finds it difficult to grasp conceptual communications…. Ms. Callahan has had proper referral to mental health support, and she has been expressing due diligence in attempting to develop a therapeutic relationship with a cognitive behavioral therapist as well as a prescribing psychiatrist….In summary, Ms. Callahan suffers from severe depressive disorder, suspected behavioral spectrum disorder, and severe difficulty with communication. She is disabled from this, and is at very high risk of suicide.

Tr. 10-11. Dr. Marshall-Olson also submitted a functional assessment, where she noted that plaintiff had "marked" limitations in several areas, including: the ability to maintain attention and concentration for extended periods; the ability to maintain regular attendance and be punctual; the ability to sustain an ordinary routine; the ability to complete a normal workday without interruption from psychologically-based symptoms; and the ability to respond appropriately to work-setting changes. Tr. 12-13. Notably, Dr. Marshall-Olson is not a

psychotherapist or psychologist. She is a primary care physician and states that she, like plaintiff's previous primary care providers, recommends that plaintiff seek psychological therapy and treatment. Tr. 10.

As part of the record, the court may consider this letter in determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r Soc. Sec.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012). On one hand, Dr. Marshall-Olson's letter does not necessarily detract from the ALJ's findings. Although plaintiff has been able to obtain treatment from a primary care provider, she still has not obtained treatment from a psychotherapist, despite the repeated recommendation of care providers for over two years. The lack of evidence from a treating psychotherapist detracts from the credibility of plaintiff's allegations and makes it difficult for the Commissioner or this reviewing court to find that she is disabled because of depression or other mental impairment. Further, Dr. Marshall-Olson's opinion is not supported by treatment records or other objective evidence and appears to be based on plaintiff's subjective complaints, which were found not credible by the ALJ.

On the other hand, Dr. Marshall-Olson is a treating physician, and her observations, particularly with respect plaintiff's depression symptoms and communication difficulties, mirror those of lay witnesses and the examining psychologists to a certain degree. Moreover, it is not this court's role to evaluate the medical evidence; that role is reserved to the Commissioner. Therefore, given the evidence of record as a whole and the marked limitations found by a treating physician, I find that outstanding issues remain. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Accordingly, remand for further administrative proceedings is appropriate for review of Dr. Marshall-Olson's opinion and for further development of the record as necessary.

13 - OPINION AND ORDER

D.    Step Four Determination

Plaintiff also argues that the ALJ erred at step four by providing a RFC hypothetical to the VE that included a claimant's ability to "understand, remember and carry semi-skilled work that has been performed in the past." Tr. 92. I agree that this phrase is arguably problematic, in that it could be interpreted to mean that the VE should have accepted that plaintiff was able to perform her past relevant work. However, the transcript of the administrative hearing does not reflect such an interpretation. The ALJ specifically asked the VE, "Can the individual perform either of the past two jobs you described?" and the VE indicated that only one of the jobs could be performed with such an RFC. Tr. 92. While it is preferable that the ALJ make specific findings regarding cognitive abilities and skill level, any error was rendered harmless by the VE's response. Moreover, in light of the court's finding that further proceedings are warranted, this argument is moot.

## CONCLUSION

For the reasons explained above, the Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

Dated this _19th_ day of July, 2016.

_____
Ann Aiken
United States District Judge

14 - OPINION AND ORDER